UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
LAVONNE SMITH,

                Petitioner,

        -against-

JOSEPH T. SMITH, Superintendent,
Shawangunk Correctional Facility,

                Respondent.
----------------------------------------------------X

**REPORT AND
RECOMMENDATION
10 CV 2268 (KAM)(LB)**

**BLOOM, United States Magistrate Judge:**

Petitioner, Lavonne Smith, proceeding *pro se*, files this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the sentence imposed for a 1996 Kings County conviction. The Honorable Kiyo Matsumoto, United States District Court Judge, referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

I. Factual History

In December 1994, petitioner, then 16 years old, participated in a robbery of a Brooklyn bicycle shop. Petitioner and a friend walked into the shop, followed by petitioner's older brother and 30-year old uncle Richard Larrier ("Larrier"). Petitioner pulled a bike down from where it was displayed but it fell on his head and knocked him down. Tr. 95-96; 137; 1078.[1] Larrier then pulled out a handgun and made a store employee, Gerald Browne ("Browne"), hand over the money from the cash register and the videotape from the security camera. Tr. 89-90. Petitioner and his brother, who was holding a broken BB gun, took a second employee, Septimus Batong ("Batong"), to another room where petitioner's brother took Batong's money and Batong was

---

[1] "Tr." references the transcript of the trial held in Kings County Supreme Court between January 16, 1996 and January 30, 1996.

1

bound with duct tape. Tr. 94-97; 200-206, 1019. At that point, the police arrived. Larrier shot and killed Officer Ray Cannon before Larrier himself was shot and killed. Tr. 109-114, 207, 211, 244-251, 821. Petitioner and the other teens hid in the basement of the bicycle shop until officers located and arrested them.[2]

In the back of the squad car, petitioner, crying, asked if the officer was okay and when the detective told petitioner that the officer died, petitioner repeatedly said that this never should have happened, he should have stayed home, it was all his uncle's fault, his uncle was going to get the money, and he only wanted a bike. Tr. 713-4. At the police station, petitioner waived his Miranda rights, signed a written confession, and recorded a confession on videotape.

II. Trial

According to petitioner, although he did not know that Larrier had a handgun, he stated the opposite in his written confession because a detective told him that doing so would ensure he would not be charged with killing the police officer. Tr. 1057-1068; 1109. Another detective told him that if he failed to repeat his written statement to the district attorney, petitioner would "end up like [his] uncle did," which petitioner took to mean that he would be killed. Tr. 1111. Petitioner testified that because of this threat, he repeated his written confession on videotape. Tr. 1113-6; 1164-5. Petitioner testified that in fact, he did not know that Larrier had a gun; he believed the only weapon to be used was the broken BB gun; and, his sole responsibility was to help tape up the employees. Tr. 1057-1062, 1067-69.

Petitioner was charged with murder in the second degree (felony murder during the course of a robbery), two counts of first degree robbery (one as to each of the store employees, both counts charging a violation of New York Penal Law § 160.15(1), which requires serious

---

[2] Petitioner testified that he and the other boys tried to escape from the basement but finding no egress, came upstairs with their hands above their heads to surrender. The officers told them to get down and as they complied, the officers began to shoot at them. Petitioner testified that he and his friends then ran back downstairs. One of his friends was wounded and petitioner tried unsuccessfully to bring his dying uncle with him down the stairs before retreating himself. The three teenage boys hid behind some boxes until they were captured. Tr. 1089-1090.

physical injury to a non-participant), and criminal possession of a weapon in the second and fourth degrees.[3] The jury acquitted petitioner of all counts except for two counts of first degree robbery and one count of criminal possession of a weapon in the fourth degree.

The court sentenced petitioner to two consecutive terms of eight and a third to twenty five years for the Brown and Batong robberies. S. 20-21.[4] In rejecting petitioner's argument that the sentences had to run concurrently and that petitioner should not receive the maximum sentence, the court stated "[t]hese are two separate robberies," "somebody got hurt during the course of the robbery," that the case was "very troublesome" because it exemplified young people's disregard for life and property rights, and that the Court admired the work of the specific police officers and police officers in general who are unjustifiably "tarr[ed] with lies" about police misconduct. S. 18-20.[5]

III. Post-Trial Litigation

On appeal, petitioner argued that imposing consecutive sentences violated his rights under state law and the Fifth and Fourteenth Amendments of the United States Constitution and that his sentence was excessive. In denying his appeal, the Supreme Court, Appellate Division, Second Department held that consecutive terms were proper because "[t]he subject robberies

---

[3] The transcript of the jury charge reads:

> The second and fourth counts of the indictment charge the defendant with the crime of robbery in the first degree, which is defined as follows:
> 
> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime causes serious physical injury to a person who is not a participant in the crime.

Tr. 1331. The Court explained the elements of first degree robbery as to Browne and Batong, listing injury to Officer Cannon as an element of both counts of robbery. Then, the trial judge stated "[t]he defendant is charged with the second count of robbery in the first degree under a different theory." Tr. 1335:5-7. However, the court did not state what that theory was; instead, it directed the jury to consider robbery in the second degree, if it found petitioner not guilty of robbery in the first degree. Tr. 1335:8-19.

[4] "S." references the transcript of petitioner's sentencing proceeding on February 20, 1996.
[5] Petitioner's sentence for criminal possession of a weapon was to run concurrently with the robbery sentences and is not at issue here.

3

were predicated upon distinct acts committed against separate victims" and "[t]he sentence imposed was not excessive." People v. Smith, 46 A.D.2d 583, 845 N.Y.S.2d 914 (2d Dep't 2007). Petitioner's application for leave to appeal to the Court of Appeals was denied on February 25, 2008. People v. Smith, 10 N.Y.3d 771 (2008).

IV. Instant Petition

After pursuing other post-trial remedies without success, petitioner timely filed the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 on two grounds: (1) the consecutive sentences are improper and (2) the sentence is excessive.

DISCUSSION

I.   Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "'adjudication on the merits' is one that (1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment." Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir.2001)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

4

The Supreme Court has held that a state court decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Thus, a federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, -- U.S. -- , 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam). "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68; see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States.").

II. Merits of Petitioner's Claims

    A. Consecutive Sentences

5

Petitioner claims that the imposition of consecutive sentences violated New York Penal Law § 70.25(2), the New York Constitution, as well as the Fifth and Fourteenth Amendments to the United States Constitution. Pet. at 13.

1. Violation of State Law

A violation of state law is not a basis for granting a writ of habeas corpus. See e.g., Ponnapula, 297 F.3d at 182. In fact, regardless of whether the state law was correctly applied, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 678. Accordingly, the Court should deny the writ to the extent it is based on a violation of New York Penal Law § 70.25(2) or a violation of the New York State Constitution. Lopez v. Fischer, No. 06-CV-4760, 2007 WL 1259146, at * 4 (S.D.N.Y. Apr. 27, 2007) (Hellerstein, J.) ("the decision of the New York courts, even if a misinterpretation of New York Penal Law Section 70.25(2), did not result in a decision that was 'contrary to, or involved an unreasonable application, of clearly established Federal law"); Davis v. Greiner, No. 02-CV-6802, 2003 WL 23198786, at * 12 (E.D.N.Y. Oct. 30, 2003) (Weinstein, J.) (petitioner's claim that imposition of consecutive sentences violated Section 70.25(2) "is not reviewable in a federal habeas proceeding").[6]

2. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court has interpreted this clause to proscribe "a second prosecution for the same offense after acquittal," "a second prosecution for the offense after conviction," and "multiple punishments for the same offense." Albernaz v. United States, 450 U.S. 333, 343 (1981) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969). "With

---

[6] The Clerk of Court is directed to send petitioner the attached copies of unpublished cases cited herein.

6

respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983).

"The question" for this Court "then becomes whether the sentencing court exceeded its authority to impose consecutive sentences under New York law." Flores v. Ercole, No. 09-CV-602, 2010 WL 3951048, at * 4 (E.D.N.Y. Oct. 7, 2010) (Irizarry, J.). See also Haji v. Miller, 584 F. Supp. 2d 498, 515 (E.D.N.Y. 2008) ("In a single-statute context where Double Jeopardy asks how many distinct commissions of a single offense occurred, the controlling measure is the allowable unit of prosecution, which turns on the statutory text and intent of the legislature … .") (internal quotations marks, parentheses, and citations omitted). Under New York law, "sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other." People v. McKnight, 16 N.Y.3d 43, 47, 942 N.E.2d 1019, 1022 (2010) (paraphrasing New York Penal Law § 70.25(2)). "The Penal Law defines 'act' as a 'bodily movement,'" which has been interpreted to mean the "actus reus or wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability." Id. at 48 (internal quotation marks omitted). The New York Court of Appeals has clarified that "even if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." People v. Ramirez, 89 N.Y.2d 444, 451, 677 N.E.2d 722 (1996). Additionally, "[c]onsecutive sentencing is permissible when the defendant's acts are 'distinguishable by culpable mental state, nature and manner of use, time, place and victim." Id. at 454 (quoting People v Brown, 604 N.E.2d 1353, 1356 (1992)).

Petitioner argues that his sentences must run concurrently because he was convicted twice for robbery in the first degree under the subsection requiring serious injury to a nonparticipant and the serious (and fatal) injury to Officer Cannon was a material element of each offense. While petitioner is correct that a material element of each crime was the same for each robbery conviction, the imposition of consecutive sentences was lawful, in light of the facts established at trial. Specifically, because petitioner's uncle took money from Browne at the cash register and then petitioner and his brother took Batong to another room and took money from him, these acts constituted two robberies separate in time, nature, victim, mens rea, and manner such that the imposition of consecutive sentences was proper. See Morrison v. Ercole, No. 05-CV-5246, 2007 WL 2362206, at * 14 (E.D.N.Y. Aug. 15, 2007) (Bianco, J.) (imposition of consecutive sentences was proper where petitioner "had two distinct goals, which he carried out in two distinct actions: he robbed [one victim] by displaying what appeared to be a handgun *and* he robbed [the victim's companion] by displaying what appeared to be a handgun"). See also Ramirez, 89 N.Y.2d at 454 (approving consecutive sentences for two robberies of two individuals under New York Penal Law § 160.25(1) where the serious injury was inflicted on the same nonparticipant, where the "entire tenor of the robbery [as to one victim] was distinct from the assault" made in the course of the robbery on the other victim).

Moreover, the two "bodily movements" against Browne and Batong did not overlap. It is only the consequence of the acts – the death of Officer Cannon – that was the same. Although serious physical injury to a non-participant is an element of first degree robbery, N.Y. Penal Law Section 70.25(2) does not prohibit "convictions of multiple offenses containing overlapping elements." Ramirez, 89 N.Y.2d at 452 n.5. As the court acted within its authority by imposing consecutive punishments for two offenses containing overlapping elements, where each crime was committed with distinct goals against distinct individuals, petitioner fails to demonstrate that

the Double Jeopardy clause has been violated. Accordingly the state court's decision to impose consecutive sentences was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. Nor was the state court decision based on an unreasonable determination of the facts in light of the evidence of the two robberies. Accordingly, the Court should deny habeas relief on this ground.[7]

B. Excessive Sentence

Petitioner also asserts that the trial court abused its discretion by sentencing him to the statutory maximum because he was young, remorseful, minimally involved in the robbery, had never been involved with the criminal justice system prior to the incident, and was led astray by his uncle.

Even if this Court finds plaintiff's argument compelling, petitioner's claim of excessive sentence should be denied as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). As noted above, petitioner's sentence was within the range prescribed by state law.

Additionally, to the extent petitioner argues that his sentence violated the Eighth Amendment,[8] his sentence does not reach the outer limits of permissible punishments under the

---

[7] Petitioner's appellate brief also cites the Fourteenth Amendment, which is the vehicle for petitioner to raise a double jeopardy claim against the state. Benton v. Maryland, 395 U.S. 784, 794 (1969) ("the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and ... it should apply to the States through the Fourteenth Amendment"). Petitioner does not frame his challenge in terms of a due process violation. Pet. 13-16. Such claim would in any event be meritless. See e.g., Bryant v. Graham, No. 08-CV-4666, 2011 WL 3876972, at * 13 (E.D.N.Y. Sept. 1, 2011) (Dearie, J.) (the "ample factual basis for the sentencing court's finding that the robbery and intentional murder were separate and distinct crimes entirely disposes of [petitioner's] due process" argument); Webb v. Walsh, No. 07-CV-2655, 2010 WL 2985879, at * 6 (E.D.N.Y. July 23, 2010) (Vitaliano, J.) ("Since the sentencing court did not make factual findings that resulted in a sentence beyond the proscribed statutory maximum for each count of conviction, no [Apprendi v. New Jersey, 530 U.S. 466 (2000)] relief is available.").

[8] Petitioner exhausted an Eighth Amendment claim by asserting that his sentence was excessive. See King v. Cunningham, 442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006) ("When a prisoner appears to have simply asserted that his

Eighth Amendment. See generally Graham v. Florida, 130 S. Ct. 2011, 2021 (2010) (The Eighth Amendment "does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime.") (internal quotations omitted); Ewing v. California, 538 U.S. 11, 30 (2003) (rejecting an Eighth Amendment challenge to sentence of 25 years to life for theft of three golf clubs under recidivist sentencing scheme); Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (two consecutive terms of 25 years to life for stealing several videotapes did not amount to an extraordinary case of gross disproportionality). Furthermore, even if the state court failed to weigh the admittedly compelling mitigating factors, such as petitioner's youth, remorse, limited involvement, and lack of previous criminal history, "the Supreme Court has held that a 'required mitigation' claim has no support other than in death penalty jurisprudence." Salcedo v. Artuz, 107 F. Supp. 2d 405, 415 (S.D.N.Y. 2000) (citing Harmelin v. Michigan, 501 U.S. 957, 995 (1991)). Accordingly, petitioner's excessive sentence claim should be denied.

## CONCLUSION

It is respectfully recommended that petitioner's application for a writ of habeas corpus should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y. State Div. Of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant

---

sentence was 'excessive,' courts have been willing to find exhaustion of an Eighth Amendment claim in state court.")(citing Diaz v. LeFevre, 688 F. Supp. 945, 947 (S.D.N.Y. 1988)).

to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: November 21, 2011
Brooklyn, New York